SHEARSON v. LITTLETON et al.

(Circuit Court, S. D. Georgia, W. D. December 14, 1900.)

1. EQUITY JURISDICTION—SUIT TO ENFORCE TRUST.
   Where a firm of debtors gave an order on a bank, which held a quantity of cotton as security for an amount due it, for the payment of the surplus proceeds of the cotton to another creditor, who agreed to receive the same on behalf of himself and certain other creditors, who were parties to the arrangement, and the bank accepted the order, but made no payment thereon, a court of equity has jurisdiction of a suit by one of the creditors who was to share in the fund, brought on behalf of himself and the others who chose to join, to enforce the trust and require an accounting from the bank, upon an averment that the person in whose favor the order was made refused to enforce it.

2. JURISDICTION OF FEDERAL COURTS—REARRANGEMENT OF PARTIES—UNNECESSARY PARTIES.
   To such a suit the creditor in whose favor the order was given is not a necessary party, since his agreement to act for the others in receiving or enforcing payment thereon was without consideration, and his joinder as a defendant, although his interests are in fact as a complainant, and he is a citizen of the same state as the other defendants, will not defeat the jurisdiction of a federal court; the complainant being an alien, and the amount involved sufficient to give the court jurisdiction.

In Equity. On demurrer to bill.

Charlton, Mackall & Anderson, for complainant.
Allen Fort and Guerry & Hall, for defendants Littleton & Lamar.

SPEER, District Judge. This question has originated in the following manner: Charles A. Shearson, an alien, subject to the queen of Great Britain and Ireland, has brought this bill against Edward Littleton and Charles W. Lamar, as co-partners doing business under the firm name and style of Littleton & Lamar, and against the Planters' Bank of Americus, and Joseph J. Wilder, all citizens of this district, and allege as follows: That the plaintiff is a creditor of Littleton & Lamar, and that with other creditors of Littleton & Lamar, among them Wilder, they went to Americus to attempt to enforce their claims against their debtor. They demanded payment, whereupon Littleton & Lamar, being informed that the plaintiff and other creditors were then and there prepared and disposed to take

legal steps to secure and recover the several amounts due to them, assured their creditors that, while they did not have money in hand to pay the debts at once, they did have pledged with the Planters' Bank of Americus 749 bales of cotton, which was at the time of the value of about $20 per bale. They were indebted to the Bank of Americus the sum only of $7,596.94, and they were willing to give an order upon the bank to pay the balance of the proceeds of the cotton, over and above the bank's debt, to discharge the claims of the creditors who were then present and insisting upon payment. This was agreed to, according to the averments of the bill, and the following letters, annexed as exhibits, express this agreement. The first, dated at Americus, Ga., May 13, 1899, addressed to the Planters' Bank, Americus, Ga., is as follows:

"Gentlemen: As it appears from the records of our books that we are indebted to you in the sum of $7,596.94 on the 11th of May, 1899, and that against same you hold lien upon collateral to the extent of 794 B. cotton, this, therefore, is to direct you to pay over to Wilder & Co., of Savannah, Ga., the net proceeds of said 794 B. C., after deducting the amount of $7,596.94 shown to be due you, and the amount of interest which may be found due to you. Please address a few lines to Messrs. Wilder & Co., Savannah, informing them that you have received this order, and will comply with same.

"Yours, truly, Littleton & Lamar."

In compliance with this request, on the same day, the Planters' Bank of Americus addressed a letter to Messrs. Wilder & Co., Savannah, Ga., as follows:

"The amount due this bank by Littleton & Lamar, as stated in their letter, is virtually correct, and as soon as this bank is satisfied we will take pleasure in conforming to Messrs. Littleton & Lamar's wishes."

Now, it is alleged that no payments have been made from the balance of the proceeds of this cotton over and above the amount of the debt due by Littleton & Lamar to the bank. Now, it will be observed that this arrangement was made for the benefit of the creditors of Littleton & Lamar, for whom Wilder undertook to act as agent to collect and disburse the fund thus set apart. Wilder has, it is alleged, taken no steps to enforce the collection of the claims. The other creditors have done nothing. This bill is brought against the parties named as defendants for the purpose of having that fund declared a secret trust, and subject to an equitable lien for the payment of his debt.

The bill is demurred to upon several grounds, the principal ground being that it has no equity, that the plaintiff had an adequate right at common law, and that Wilder was really a plaintiff to the bill, and ought to have been joined as plaintiff, which the court should now accomplish by a rearrangement of the parties, with the result that the court would be defeated of its jurisdiction.

Now, it strikes me that there is rarely presented to the court a case where the grounds for equitable jurisdiction are clearer than in this case. There is the substantial claim of Shearson, evidenced by his account annexed to the bill, showing an aggregate indebtedness on the part of Littleton & Lamar of $3,871.17. There is the distinct agreement that the balance of the proceeds of this cotton over and above $7,596.94 would be held by the bank and paid

to Wilder, and that has not been paid. It appears, it is true, upon the face of the papers, that Wilder & Co. only have the right to collect this sum; but the averments of the bill are that the collection was to have been made, not merely for Wilder & Co., but for Shearson and other creditors. Shearson's rights, therefore, are obscured by the form of the correspondence; but the court of equity will look through that form, in fact through all forms, and ascertain if a party really has a substantial right. There, too, is the necessity existing of taking an account, which is another ground of equitable jurisdiction, and there is also some averment of conspiracy between Littleton & Lamar and the bank, with the unlawful purpose to prevent the payment of this sum. If these facts be true,—and they are assumed to be true,—why was there a refusal of payment? Ought not the court to exercise its equitable powers on the application of a creditor to reach this fund, which was like a deposit in a bank for the benefit of creditors? Is it not true the bank has no more right to retain it than it would have to retain a deposit in the face of proper demand for its payment?

But it is said that the court will be defeated of its jurisdiction because Wilder ought to be considered a plaintiff. It is true that, if Wilder necessarily appears here at all, he must appear as plaintiff. And there is an averment in the bill that they were under obligation to compel this payment, and looking merely at this averment of the bill, without regard to the legal effect of the averment, in view of the rest of the plaintiff's case, the court would be obliged to take the view presented by the ingenious argument of Mr. Guerry, make Wilder a plaintiff, and dismiss the bill because one of the parties plaintiff is a citizen of Georgia. But what is the correct view of it? Wilder was under no legal obligation to compel the payment of this balance. He undertook to do it, but it does not appear that any consideration was paid him by other creditors. His agreement, then, was a mere nudum pactum. He can ignore his rights to enforce payment of his debt if he thinks proper. If he did this, as it appears he did, is Shearson, who has a claim of $3,871.17, to be denied his rights? Clearly not, in my opinion. He asks no relief against Wilder, who should be stricken from the bill as an unnecessary party, whose presence would defeat jurisdiction, and deprive this alien of his rights the constitution intended to secure him. Shearson has a right to an accounting, and a right to a decree, on these averments establishing his equitable lien upon this fund, and the consequent duty devolves upon the court to distribute the remainder of the fund to other creditors, who have the right to intervene if they see fit to do so. The fact that Shearson is an alien imposes upon this court jurisdiction of his controversy, and the case, as I have already said, seems, in its entirety, to be a remarkably clear instance for the exercise of the equitable powers which are sought by the pleadings, and I therefore feel obliged to overrule the demurrers on all the grounds.